NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TRANSTEX INC., FKA TRANSTEX COMPOSITE INC.,**
*Appellant*

**v.**

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2020-1140

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2018-00737.

---

Decided:  February 3, 2023

---

JOHN CARACAPPA, Steptoe & Johnson, LLP, Washington, DC, for appellant.  Also represented by SCOTT RICHEY, JOHN WILLIAM TOTH; ROBERT KAPPERS, Chicago, IL.

MAI-TRANG DUC DANG, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for

intervenor.  Also represented by PETER J. AYERS, THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED, MARY BETH WALKER.

―――――――――

Before PROST[1], SCHALL, and REYNA, *Circuit Judges.*

Opinion for the court filed by Circuit Judge PROST.

Dissenting opinion filed by Circuit Judge SCHALL.

PROST, *Circuit Judge.*

The Patent Trial and Appeal Board ("Board") found claims 1–9, 19, and 20 of U.S. Patent No. 7,942,471 ("the '471 patent") unpatentable as obvious. *WABCO Holdings Inc. v. Transtex Composites Inc.*, No. IPR2018-00737, Paper 30, 2019 WL 4677106 (P.T.A.B. Sept. 24, 2019) ("*'471 Final Written Decision*").  Patent owner, Transtex, Inc. ("Transtex"), appeals.[2]  We affirm for the reasons set forth below.

## BACKGROUND

WABCO Holdings, Inc. and Laydon Composites Ltd. (collectively, "WABCO") petitioned for inter partes review of claims 1–9, 19, and 20 of the '471 patent and claims 1–20 of U.S. Patent No. 8,449,017 ("the '017 patent").  The Board found all challenged claims of the '471 patent and claims 1, 5–11, and 15–19 of the '017 patent unpatentable as obvious in light of Layfield and Rinard.[3]  *'471 Final Written Decision*, 2019 WL 4677106, at *14; *WABCO Holdings Inc. v.*

―――――――――

[1]    Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

[2]    Transtex was formerly known as Transtex Composite Inc., so the Board's final written decision caption reflects that name.

[3]    U.S. Patent No. 7,578,541 ("Layfield"); U.S. Patent No. 5,280,990 ("Rinard").

*Transtex Composites Inc.*, No. IPR2018-01319, Paper 25, at 65 (Jan. 10, 2020) ("*'017 Final Written Decision*"). Transtex appealed both Board decisions. Only the *'471 Final Written Decision* is at issue here, but a brief discussion of the companion case is warranted given the similarities between the challenged claims and the issues raised.[4]

I

As Transtex notes, the '017 and '471 patents are related and have substantially similar specifications. Appellant's Br. 1 n.1. Both patents generally relate to aerodynamic trailer skirts. And their specifications explain that trailer skirts are used to "reduce the aerodynamic air drag and improve fuel efficiency" but are typically prone to damage (breaking and bending such that they no longer maintain an aerodynamic shape) when they encounter foreign objects in the road. '471 patent col. 1 ll. 20–45; '017 patent col. 1 ll. 30–55. Both patents state that "[t]here is a need in the art for . . . a resilient skirt assembly." '471 patent col. 1 ll. 47–49; '017 patent col. 1 ll. 57–59. And they describe "a resilient skirt assembly" and "a resilient strut adapted to secure a skirt panel to a road trailer." '471 patent col. 2 ll. 3–4, col. 2 ll. 19–20; '017 patent col. 2 ll. 5–6, col. 2 ll. 20–21.

The representative claim at issue in the '017 patent appeal was:

> 1. *A resilient strut adapted to secure an aerodynamic skirt to a trailer*, the aerodynamic skirt

---

[4]    In the *'017 Final Written Decision*, the Board also found that WABCO had not shown that claims 2–4, 12–14, and 20 of the '017 patent, which claimed resilient struts of a particular shape, were unpatentable as obvious. WABCO cross-appealed, and we affirmed the Board's determination on those claims. No shape-specific limitations are at issue here, so we don't discuss that aspect of the related case.

> being adapted to be substantially longitudinally mounted to the trailer,
>
> the aerodynamic skirt comprising a skirt panel including a front portion and a rear portion, the front portion being adapted to be mounted toward a forward portion of the trailer and the rear portion being adapted to be mounted toward a rear portion of the trailer in a configuration reducing air drag about the trailer, the skirt panel being adapted to move away from the configuration reducing air drag about the trailer when contacting a foreign object and to recover the configuration reducing air drag about the trailer thereafter,
>
> *the resilient strut being adapted to sustain an elastic deformation when a load is applied to the resilient strut when the skirt panel moves away from the configuration reducing air drag about the trailer and to self-recover the resilient strut original shape when the load is removed, the resilient strut including a longitudinal shape variation adapted to change a mechanical strength of the resilient strut and influence a stiffness of the resilient strut.*

*Transtex Inc. v. Laydon Composites Ltd.*, 848 F. App'x 901, 903 (Fed. Cir. 2021) ("*Transtex I*") (emphasis in original) (quoting '017 patent claim 1).

In *Transtex I*, Transtex challenged the Board's conclusions related to the resilient strut limitation. Specifically, it argued that the Board's motivation-to-combine and reasonable-expectation-of-success findings were erroneous. We rejected both arguments and affirmed the Board's obviousness determination.[5] We concluded that the Board's

---

[5]    The discordant timing of our decisions here and in *Transtex I* is a product of the two Final Written Decisions' differing temporal relationships with *Arthrex*. We rejected

motivation-to-combine finding "was more than an impermissible conclusory assertion" and that it was supported by substantial evidence in the form of Mr. Tres's expert testimony. *Transtex I*, 848 F. App'x at 907. As for reasonable expectation of success, we found that "Mr. Tres's declarations confirm that the expectation of success here is reasonable in view of the teachings of Layfield and Rinard" and that the Board's decision had adequately set out the reasons for its conclusion. *Id.* at 908.

This appeal is also centered on the Board's conclusions about a resilient strut limitation. The representative claim of the '471 patent at issue here is:

---

Transtex's Appointments Clause challenge in the '017 patent appeal because the Board's decision issued after our then-binding decision in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019). *Transtex I*, 848 F. App'x at 905 n.3. The *'471 Final Written Decision* issued before our *Arthrex* decision, so this case was initially remanded for proceedings consistent with that decision. Order (Feb. 5, 2021), ECF No. 64. After the Supreme Court's decision in *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), the mandate was recalled, and the case was remanded for the limited purpose of seeking Director review. Order (Dec. 30, 2021), ECF No. 82. WABCO withdrew from the appeal before Director review was denied. Order (Feb. 18, 2022) ECF No. 85. When the appeal was reinstated, supplemental briefing was ordered and the United States Patent and Trademark Office ("PTO") was permitted to respond to all issues raised in Transtex's appeal (prior to WABCO's withdrawal the PTO's brief had addressed only the Appointments Clause issue). Order (July 26, 2022), ECF No. 93. Transtex is no longer pursuing an Appointments Clause challenge. Appellant's Supp. Reply Br. 2 n.3.

1.   An aerodynamic skirt adapted to be substantially longitudinally mounted to a trailer, the aerodynamic skirt comprising:

(a) a skirt panel including a front portion and a rear portion, the front portion being adapted to be mounted toward a forward portion of the trailer and the rear portion being adapted to be mounted toward a rear portion of the trailer in an aerodynamic configuration of the skirt, the front portion having a front height and the rear portion having a rear height, the front height being shorter than the rear height, the skirt panel being adapted to move away from the aerodynamic configuration of the skirt when contacting a foreign object and to recover to the aerodynamic configuration of the skirt thereafter,

(b) the skirt panel being resiliently secured to the trailer with a plurality of resilient struts, each resilient strut comprising

(i) an intermediate portion;

(ii) a trailer connecting portion at a first end thereof; and

(iii) a skirt connecting portion at a second end thereof,

(iv) *the resilient strut being adapted to sustain an elastic deformation when a load is applied thereon when the skirt panel moves away from the aerodynamic configuration of the skirt both proximally toward a center of the trailer and distally away from the center of the trailer, and to self-recover an original shape when the skirt panel returns to the aerodynamic configuration of the skirt when the load is removed.*

'471 patent claim 1 (emphasis added).

The limitations at issue in both appeals are similar. Both struts are adapted to sustain an elastic deformation— the only difference is whether they can do so when the skirt panel moves away from its configuration in general (the '017 patent's resilient strut limitation) or when it moves away from its configuration bidirectionally (towards the center and away from it) (the '471 patent's resilient strut limitation).

The similarities between appeals don't end there. As in *Transtex I*, Transtex argues that the Board's motivation-to-combine and reasonable-expectation-of-success findings related to the resilient strut limitation were erroneous here as well. And those are the only aspects of the Board's decision that Transtex challenges.

## II

In the *'471 Final Written Decision*, the Board first discussed WABCO's anticipation ground. It found that Layfield taught all limitations of the representative claim aside from the resilient strut limitation. *'471 Final Written Decision*, 2019 WL 4677106, at *5–6. For the resilient struts, the Board concluded that Layfield did not expressly teach a flexible strut or expressly "discuss the desirability of strut flexibility." *Id.* at *6. Further, in the context of its inherency analysis, the Board concluded that struts made of the materials disclosed in Layfield without any consideration of their construction (including the strut's thickness) would not *necessarily* sustain the elastic deformation the claims require. *Id.* at *7. Transtex does not challenge these aspects of the Board's decision.

Having already concluded that Layfield taught the other elements, the Board addressed the combination of Rinard and Layfield only as it related to the resilient strut limitation. The Board rejected Transtex's arguments on lack of motivation to combine and absence of reasonable

expectation of success and concluded that "[WABCO] ha[d] demonstrated sufficiently that one of ordinary skill in the art would have had reason with rational underpinning to combine the teachings of Rinard and Layfield in the manner proposed by [WABCO] with a reasonable expectation of success." *Id.* at *13. Transtex timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

"We review the Board's ultimate obviousness determination de novo and underlying factual findings for substantial evidence." *Celgene Corp. v. Peter*, 931 F.3d 1342, 1349 (Fed. Cir. 2019). The Board's findings on reasonable expectation of success and motivation to combine are factual. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359, 1361 (Fed. Cir. 2017). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding." *Shoes by Firebug LLC v. Stride Rite Child.'s Grp., LLC*, 962 F.3d 1362, 1369 (Fed. Cir. 2020). Even where the record could support two conclusions, substantial evidence supports either finding. *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

Transtex argues, as it did in *Transtex I*, that the Board's findings on motivation to combine and reasonable expectation of success were erroneous. We address each challenge in turn.

I

Transtex argues that substantial evidence does not support the Board's motivation-to-combine finding because the testimony offered by WABCO's expert, Mr. Tres, was too conclusory to support it. Appellant's Br. 29–31. Transtex also contends that the Board did not adequately explain the basis for its motivation conclusion in any event. Appellant's Br. 32–33. This is essentially the same argument—about the Board's finding regarding the same pieces

of prior art—that Transtex advanced in *Transtex I*. *Transtex I*, 848 F. App'x at 906. We do not find it persuasive here either.

The Board sufficiently explained its reasons for finding a motivation to combine Layfield with Rinard's resilient support elements. Before the Board specifically discussed the resilient strut limitation, it had already concluded that "Layfield explicitly teaches flexibility of the skirt panel." *'471 Final Written Decision*, 2019 WL 4677106, at \*5. And it had described Rinard as "explain[ing] that [its] air scoops, including vertical support elements 76, can be made 'from a resilient material' . . . allow[ing] the air scoop 'to resume its illustrated configuration upon removal of contact' with another structure, such as a loading dock." *Id.* at \*4 (citing Rinard col. 10 ll. 43–50). Ultimately, the Board concluded that "[WABCO] ha[d] shown that one of skill in the art would have had a reason with rational underpinning to look to other similar types of trailer components that are also flexible to make further improvements to Layfield's design." *Id.* at \*12. In doing so, the Board also explained why it was rejecting Transtex's arguments: because they either sought to explain why Rinard's support elements alone did not teach the resilient strut instead of addressing the combination or were based on the previously rejected contention that Layfield did not teach a flexible skirt panel.

Substantial evidence supports the Board's conclusion. Mr. Tres testified that a person of ordinary skill in the art ("POSA") would have been "motivated to implement Rinard's teachings concerning the resilient arcuate element 72 and support elements 76 in the Layfield trailer fairings to provide a skirt panel that recovers its aerodynamic configuration after moving away from that position when contacting a foreign object and struts that are 'resilient' as recited in the challenged claims of the '471 patent." J.A. 1374 ¶ 148. And this conclusion has a sufficient basis. For example, Mr. Tres based his opinion on the fact that

"Rinard and Layfield are both concerned with providing flexible fairing components that can be elastically deformed" and that a POSA would have recognized that Layfield's resilient skirt would benefit from a resilient strut. J.A. 1374 ¶ 145–46.

In sum, the Board's motivation-to-combine finding was not erroneous: it is supported by substantial evidence. The dissent agrees with this conclusion and would not disturb the Board's motivation-to-combine finding on appeal either.

## II

As for reasonable expectation of success, Transtex argues that the Board improperly shifted the burden by requiring that Transtex show no reasonable expectation of success. Appellant's Br. 36–38. Additionally, Transtex argues that the Board's conclusion is erroneous because the Board never explained how the proposed combination would work. *Id.* at 39–41. Neither argument is persuasive.[6]

First, the Board did not improperly shift the burden to Transtex. The Board simply noted that one of Transtex's reasonable-expectation-of-success arguments only addressed whether Rinard's resilient components alone would move away from the trailer without addressing why the combination was subject to the same argument. *'471 Final Written Decision*, 2019 WL 4677106, at *11.

Second, the Board explained its reasons for finding reasonable expectation of success. And substantial evidence supports that finding. This is where our conclusions and

---

[6] Because we reject Transtex's arguments, we do not need to address the PTO's contention that Transtex is collaterally estopped from advancing them based on our decision in *Transtex I*.

the dissent's part ways.  The dissent would reverse on this ground, concluding that no explanation by the Board would be sufficient in any event because the record lacks substantial evidence of reasonable expectation of success.  We, on the other hand, conclude, as we did in *Transtex I*, that Mr. Tres's declarations in view of Layfield and Rinard provided a sufficient and proper basis for the Board's conclusion.

"[T]he expectation of success need only be reasonable, not absolute."  *See Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007).  So the Board did not need to conclude that a POSA would be certain that the strut would sustain an elastic deformation; it just needed to conclude that it would have been reasonable for a POSA to expect that result.  The Board explained that it agreed with WABCO's argument, supported by expert testimony, that "Rinard provides an obvious solution to the problem of aerodynamic fairings mounted to trailers encountering external objects that can damage the aerodynamic performance of the fairing, and that applying this solution to the Layfield struts would yield the predictable result of allowing the Layfield struts 58 to absorb greater impacts without having to be repaired or replaced."  *'471 Final Written Decision*, 2019 WL 4677106, at \*11 (cleaned up).  That was sufficient.

Substantial evidence supported that conclusion.  Rinard's resilient vertical support elements, Layfield's struts and flexible skirt panel, and Mr. Tres's testimony that relies on both references and his background knowledge in mechanics and plastics all provided substantial evidence for the Board's finding.  And because there are factual and rational underpinnings to support Mr. Tres's opinions, the Board was within its discretion to rely on them to reach its conclusion.  *See Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1376 (Fed. Cir. 2020).

Additionally, this is a situation where the evidence of motivation to combine—evidence that everyone agrees

meets the substantial-evidence threshold—and the evidence of reasonable expectation of success significantly overlap. Likewise, the Board's discussion of both issues overlapped. Mr. Tres's declaration provided that a POSA would have "recognized the benefit" of the combination *so that* the struts "may deform either inwardly or outwardly." J.A. 1374 ¶ 147; *see also* J.A. 1373 ¶ 145 ("Rinard and Layfield are both concerned with providing flexible fairing components that can be elastically deformed . . . ."). And the Board found a motivation to look to flexible trailer components specifically. *'471 Final Written Decision*, 2019 WL 4677106, at *12. Thus, it was reasonable for the Board to look to this same evidence and conclude that a POSA would have reasonably expected the resiliency benefit that motivated him to combine the references in the first instance.

The dissent would conclude that, notwithstanding that substantial evidence supports a POSA's motivation to combine the references specifically because they were flexible—the correct conclusion, everyone agrees—nonetheless, it does not support a POSA's reasonable expectation that the resulting combination would be flexible. This record, devoid of any indication that this is an unpredictable art, does not support this distinction. "[D]emonstrat[ing] a motivation to combine references does not *necessarily* imply that the challenger has also met its burden of showing a reasonable expectation of success in achieving a claimed method of treatment." *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021) (emphasis added). But in some instances, a POSA will be motivated to combine familiar elements for the same reasons she would expect them to yield predictable results. This is one such instance.

Finally, the slight differences between the claim limitation at issue here and the claim limitation at issue in our previous decision do not support the dissent's inconsistent outcome. In *Transtex I* we concluded that "Mr. Tres's declarations confirm that the expectation of success here is

reasonable in view of the teachings of Layfield and Rinard." 848 F. App'x at 908.  In contrast, here the dissent would rest its reversal on its conclusion that a comparable declaration was too conclusory for the Board to have properly relied on it.  Because both declarations are sufficient, there is no basis to reach a different conclusion here than we did in *Transtex I*.

## CONCLUSION

We have considered Transtex's other arguments and find them unpersuasive.  Since substantial evidence supports the Board's motivation-to-combine and reasonable-expectation-of-success findings, we affirm the Board's determination that claims 1–9, 19, and 20 of the '471 patent are unpatentable as obvious.

## **AFFIRMED**

## COSTS

No costs.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**TRANSTEX INC., FKA TRANSTEX COMPOSITE INC.,**
*Appellant*

**v.**

**KATHERINE K. VIDAL, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2020-1140

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2018-00737.

---

SCHALL, *Circuit Judge*, dissenting.

The majority affirms the Board's obviousness determination.  It does so because it concludes that substantial evidence supports the Board's findings with respect to motivation to combine and reasonable expectation of success.  While I agree with the majority on the first point, for the reasons stated below, I part company with it on the second point.

The challenged claims of the '471 patent, unlike the claims of the '017 patent at issue in *Transtex I*, require that the resilient strut of the trailer skirt be "adapted to sustain an elastic deformation when a load is applied thereon when the skirt panel moves away from the aerodynamic configuration of the skirt *both proximally toward a center of the trailer and distally away from the center of the trailer*" and then "*self-recover*." '471 patent, Reexam. Cert. col. 1 ll. 25– 52 (emphases added).[1]  In my view, the Board did not explain how the combination of Layfield and Rinard would have reasonably been expected to achieve this claimed feature.  Nor do I see anything in Mr. Tres's testimony that provides substantial evidence that would support such a finding.  Mr. Tres's opinions regarding reasonable likelihood of success merely paraphrase the claim language and/or depend on WABCO's argument that Layfield alone teaches a resilient strut, which argument the Board expressly rejected.  *See* J.A. 1374, ¶ 147; J.A. 1374–75, ¶ 149; J.A. 1381, ¶ 164; *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1358 (Fed. Cir. 2019) ("Conclusory expert testimony does not qualify as substantial evidence.").  The most pertinent testimony of Mr. Tres states:

> In my opinion, a skilled artisan would have recognized the benefit of constructing the Layfield struts 58 from a "resilient material" as taught by Rinard so that the Layfield struts 58 may deform either inwardly or outwardly in response to a load being applied against them, such as, when encountering an

---

[1]    The requirement that the resilient strut permit movement of the skirt panel "both proximally toward a center of the trailer and distally away from the center of the trailer" was added during ex parte reexamination proceedings of the '471 patent.  It was the addition of this claim language that led the examiner to conclude that the claims were patentable over the prior art of record, which included Layfield and Rinard.  J.A. 1189–90.

> external structure like a loading dock and to return to their original position supporting the panels in an aerodynamic configuration once the load caused by the contact with external structure is removed.

J.A. 1374 ¶ 147.  This testimony, provided in connection with motivation to combine, supports that one of skill in the art would have appreciated that a Layfield strut, if made from Rinard's resilient material, would have the ability to collapse and recover.  *See also* J.A. 1372–74, ¶¶ 143–46; J.A. 1374, ¶ 148; J.A. 1375, ¶ 150.  I do not believe, however, that this testimony constitutes substantial evidence that one of skill in the art would have had a reasonable likelihood of success in combining Layfield and Rinard to achieve a strut that would be adapted to permit movement of a trailer skirt "distally away from the center of the trailer" and then "self-recover."

Thus, and because I would reject the Director's argument that Transtex is collaterally estopped from pursuing its appeal in view of *Transtex I*, I would conclude that the Board committed reversible error in finding that a skilled artisan would have had a reasonable expectation of success in achieving the claimed invention.[2]  I therefore respectfully dissent.

---

[2]    Collateral estoppel is not limited to situations where patent claims are identical but instead "requires that the *issues of patentability* be identical." *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) (concluding that collateral estoppel applied where identical issues of patentability were presented).  Where, as here, there are differences between the unadjudicated patent claims and adjudicated patent claims that materially alter the question of invalidity, collateral estoppel does not apply.  *See id.*; *see also Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).